RECEIVED
JUL 1 1 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| COURTLAND TATUM | CIVIL ACTION NO.: 1:12-cv-2670 |
| VERSUS | |
| SHERIFF'S DEPT. NATCHITOCHES PARISH, ET AL. | JUDGE TOM STAGG<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION

Before the court are two motions for summary judgment (Docs. 42 and 47) and a motion to dismiss (Doc. 45) referred to me by the district judge for report and recommendation. The deadlines for filing oppositions have run; thus, the matter is ripe for consideration.

## Background

On October 11, 2012, *pro se* plaintiff Courtland Tatum ("Tatum"), proceeding *in forma pauperis*, filed a civil rights complaint against the Natchitoches Parish Sheriff's Department ("Sheriff's Dept.") pursuant to 18 U.S.C. §1983 (Doc. 1). In the complaint, Tatum alleged the "Defendant maliciously and falsely, and without probable cause swore to an affidavit", charged him with practicing law without a license pursuant to La. R.S. 37:213, arrested him and detained him in the Natchitoches Parish Detention Center ("Detention Ctr.") for 72 hours. He further alleges that the court dismissed the charge upon a showing of evidence of malicious intent and a lack of probable cause.

Tatum claimed he suffered humiliation, nervous shock, loss of sleep, mental anguish, loss of reputation for honesty and an impaired ability to obtain fidelity and fiduciary bonds needed for his

employment as a result of the arrest. Accordingly, he claimed a loss of "approximately $1000" in earnings and $10,000,000 in compensatory and punitive damages.

On December 27, 2012, the Sheriff's Dept. filed a motion to dismiss and argued it lacked the capacity to sue or be sued (Doc. 14). Tatum initially responded by filing a memorandum in opposition (Doc. 16). Thereafter, he filed three separate motions to amend his complaint (Docs. 17, 21 and 26) which I granted on August 18, 2013.[1]

Tatum's first amended complaint added the City of Natchitoches, Detective Carey Etheredge ("Etheredge"), Detective Ronnie Quick ("Quick"), the Natchitoches Parish Detention Center and Judge Dee Hawthorne, district judge of the 10th Judicial District Court, Natchitoches Parish, Louisiana, as defendants (Doc. 29). His second amended complaint (Doc. 30) changed his loss of income claim to $165,000 and the amount of damages to $25,000,000.[2]

The City of Natchitoches responded to the lawsuit by filing an answer and a motion for summary judgment (Doc. 41, 42); the Natchitoches Parish Detention Center filed a motion to dismiss (Doc. 45); and, Detectives Etheredge and Quick filed a joint motion for summary judgment (Doc. 47). To date, Tatum has not filed a memorandum in opposition to any of these motions.[3]

---

[1] I also issued a Report and Recommendation on August 18, 2013 recommending the motion be granted and the claims against the Sheriff's Dept. be dismissed with prejudice. That Report and Recommendation was adopted by the district judge on September 11, 2013.
[2] Tatum filed a third amended complaint adding a paragraph stating, "Plaintiff is an adult resident citizen Courtland Tatum, of Pineville, Rapides Parish, Louisiana." (Doc. 31).
[3] Though Tatum named Judge Dee Hawthorne as a defendant, the summons was returned unexecuted (Doc. 40). There is no indication from the record that service was attempted again and nothing indicates Judge Hawthorne ever made

2

Law and Analysis

City of Natchitoches

The City of Natchitoches contends summary judgment should be granted with respect to all claims against it as Tatum fails to assert, much less establish, the City of Natchitoches had an official policy, procedure or custom that violated the Constitution or resulted in a deprivation of his civil rights. Furthermore, neither The City of Natchitoches nor its employees were involved in any of the incidents alleged by Tatum in his lawsuit.

A municipality is liable under §1983 only when injury results from execution of governmental policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy. Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir.2002), *cert. denied* 537 U.S. 1110 (2003); Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978). Tatum does not allege the City of Natchitoches had an official policy, custom or practice that violated the Constitution or resulted in a violation of his constitutional rights. In fact, neither the City of Natchitoches nor any of its employees are mentioned by name in any of the factual allegations contained in Tatum's complaints.

According to the affidavit of Kelly Parks, Records Supervisor for the Natchitoches Police Department, this is due to the fact "the

---

an appearance. Accordingly, I recommend that the claims against her be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m). See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir.), *cert. denied* 510 U.S. 1191 (1994); Systems Signs and Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir.1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir.1988). Additionally, Judge Hawthorne is absolutely immune from suit for actions undertaken in her judicial capacity.

Natchitoches Police Department has not been involved in any matter in which Mr. Tatum was the subject of an investigation or an arrest." (Doc. 42-3). Additionally, the affidavit of Mickey Dove, the Chief of the Natchitoches Police Department, shows he "conducted an inquiry in his office and has determined that no Natchitoches Police Department employees were involved in the arrest incarceration or prosecution of Mr. Tatum." (Doc. 42-4). Finally, the affidavit of Edd Lee, Chief of Staff of the City of Natchitoches, establishes he "conducted an inquiry in his office and has determined that no employees of the City of Natchitoches were involved in the arrest, incarceration or prosecution of Mr. Tatum about which he complains in his lawsuit." (Doc. 42-5).

Tatum fails to present any evidence which challenges the arguments and testimony submitted by the City of Natchitoches. Thus, we look to the allegations in his complaints. Even when those allegations are taken as true, there is nothing which creates a genuine issue of material fact. Accordingly, all claims against the City of Natchitoches should be dismissed with prejudice.

Natchitoches Parish Detention Center

The Natchitoches Parish Detention Center filed a motion to dismiss alleging it lacked capacity to be sued. The law of the state in which the court is located is applied when determining capacity. Fed.R.Civ.P. 17(b). As this court is located in Alexandria, Louisiana, the law of Louisiana governs.

Louisiana requires an entity to qualify as a "juridical person" in order to be sued. La.Civ.Code art. 24. A juridical person is "an

4

entity to which the law attributes personality, such as a corporation or partnership. Id. Tatum failed to allege or otherwise establish the Natchitoches Parish Detention Center is capable of being sued. The undersigned finds no law defining it as a juridical person. Rather, it is a building that is physically maintained by the parish and administered and operated by the sheriff. La.Rev.Stat.Ann. §15:702 and §15:704. It is incapable of being sued; therefore, all claims against the Natchitoches Parish Detention Center should be dismissed with prejudice.

<u>Detectives Etheredge and Quick</u>

Etheredge and Quick assert the defense of qualified immunity in their motion for summary judgment. The defense protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. <u>Woods v. Smith</u>, 60 F.3d 1161, 1164 (5th Cir.1995), cert. denied 516 U.S. 1084 (1996). "Qualified immunity cloaks a police officer from personal liability for discretionary acts which do not violate well established law." <u>Streetman v. Jordan</u>, 918 F.2d 555, 556 (5th Cir.1990)(citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), rehearing denied 923 F.2d 851 (5th Cir.1991). "[Q]ualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful.'" <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002), citing <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001), receded from in <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009)(the requirement that the court first determine whether a violation was alleged no longer applies).

The bifurcated test for qualified immunity is: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident." Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir.1998)(citing Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir.1997).

Determining whether the plaintiff has alleged a violation of a clearly established constitutional right requires the analysis be made under the current applicable constitutional standards. Hare, 135 F.2d at 325. A constitutional right is clearly established if, in light of pre-existing law, the unlawfulness is apparent. Officials must observe general, well-developed legal principles. Doe v. Taylor Independent School Dist., 15 F.3d 443, 445 (5th Cir.), cert. denied 513 U.S. 815 (1994).

The second prong of the qualified immunity test is better understood as two inquiries: (1) whether the allegedly violated constitutional right was clearly established at the time of the incident, and, if so, (2) whether the conduct of the defendants was objectively unreasonable in light of the clearly established law at that time.

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiffs, regardless of the objective state of the law at the time of his conduct. Douthit v. Jones, 619 F.2d 527, 533 (5th Cir.1980). A party seeking to avoid a qualified immunity defense must prove that the official either

6

actually intended to do harm to him or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. Id.

Invocation of the qualified immunity defense shifts the burdens of proof:

The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.

Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir.2001)(citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir.1992).

In the instant case, Tatum contends the defendants violated his constitutional rights when they falsely arrested and imprisoned him. The constitutional torts of false arrest and/or false imprisonment require a showing that there was no probable cause for the arrest. Brown v. Lyford, 243 F.3d 185, 189 (5th Cir.2001), cert. denied, 534 U.S. 817 (2001). See Beck v. Ohio, 379 U.S. 89, 91 (1964)(the right to be free form arrest without probable cause is a clearly established constitutional right).

An office has probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime. See Gladden v. Roach, 864 F.2d 1196, 1199 (5th Cir.), cert. denied, 491 U.S. 907 (1989). If probable cause for an arrest even arguably existed, immunity cannot be lost. Brown, 243 F.3d at 190. A police office has qualified immunity if he "reasonably but mistakenly conclude[s] that probable cause is present." Hunter v. Bryant, 502

U.S. 224, 227 (1991), quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987).

The detectives argued in their motion that probable cause existed to charge and arrest Tatum for practicing law without a license. In support, they provided a copy of the affidavit Etheredge presented to the court to obtain an arrest warrant (Doc. 47-4). In it, Etheredge states District Attorney Van Kyzer introduced him to a woman named Kathy Armstrong Small on April 21, 2011 and asked Etheredge to help Ms. Small file a complaint regarding a man she paid to prepare divorce papers. That man was Tatum and according to Ms. Small, he advised her that he was in the process of having his criminal history expunged so he could practice law. Ms. Small provided Etheredge with a receipt evidencing the payment of $450 to Tatum for the drafting of the divorce papers.

Etheredge introduced Ms. Small to Quick for the purpose of completing an offense report. Quick did so and Etheredge conducted an investigation into Tatum's criminal history. Etheredge learned Tatum was involved in several incidents for which he was charged and/or arrested. The arrests included one for Aggravated Assault, one for Battery of a Police Officer and one for Aggravated Assault with a Firearm. Etheredge also learned Tatum did not possess a law license and was not able to practice law given his criminal history.

Based on the complaint and the information gained from his investigation, Etheredge swore out an affidavit and charged Tatum with one count of practicing law without a license pursuant to Louisiana Revised Statute 37:213. Etheredge presented the affidavit to Judge

Dee Hawthorne who determined probable cause existed so she signed the warrant for arrest on May 2, 2011. One week later, two Sheriff's Deputies served the warrant on Tatum, placed him in their custody and transported him to the Natchitoches Detention Center for booking where he remained for three days until he was released on bond.

Tatum's contention that the defendants lacked probable cause to arrest him is conclusory in nature. He has not provided argument or evidence which casts doubt on the facts asserted by Etheredge and Quick. Accordingly, there is no genuine issue of material fact with respect to the validity of the arrest. Additionally, Tatum fails to provide more than a conclusory statement that the intent of Etheredge or Quick was malicious. Accordingly, Etheredge and Quick are immune from suit and the claims against them should be dismissed with prejudice.

<u>Conclusion</u>

Based on the foregoing,

IT IS RECOMMENDED that the City of Natchitoches motion for summary judgment (Doc. 42) be GRANTED and all claims against it be DISMISSED with prejudice.

IT IS FURTHER RECOMMENDED that the Natchitoches Parish Detention Center's motion to dismiss (Doc. 45) be GRANTED and all claims against it be DISMISSED with prejudice.

IT IS FURTHER RECOMMENDED that the motion for summary judgment filed by Etheredge and Quick be GRANTED (Doc. 47) and all claims against it be DISMISSED with prejudice.

IT IS FURTHER RECOMMENDED that all claims against Judge Hawthorne be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before making a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana on this 10th day of July, 2014.

James D. Kirk
UNITED STATES MAGISTRATE JUDGE